**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MARIA B.,[1]

        **Plaintiff,**

    v.

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

        **Defendant.**

        **Case No. 2:24-cv-1206**
        **Magistrate Judge Cheryl L. Pollak**

**OPINION AND ORDER**

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Maria B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the Commissioner of Social Security, is substituted as Defendant in his official capacity.

## I.    PROCEDURAL HISTORY

On January 27, 2021,[3] Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she had been disabled since an alleged onset date of April 2, 2020. R. 14. Plaintiff's applications were denied initially and upon reconsideration. R. 165–74, 177–92. Pursuant to Plaintiff's request for a *de novo* hearing before an administrative law judge ("ALJ"), R. 241, ALJ Sharon Allard held a hearing on December 8, 2022, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 38–75.

In a decision dated January 31, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from April 2, 2020, the alleged onset date, through the date of that decision. R. 11–30. That decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review on January 16, 2024. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 9, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 2.[4] On April 20, 2026, the case was reassigned to the undersigned. ECF No. 21. The matter is now ripe for disposition.

---

[3] Plaintiff's prior claim for disability benefits, with an alleged onset date of November 1, 2017, was denied by Commissioner, and affirmed on appeal to the District Court. *See Baez v. Commissioner of Social Security*, 2:21-cv-03343-JXN (D.N.J. July 20, 2022). In denying Plaintiff's earlier application, another ALJ, Peter R. Lee, found that Plaintiff suffered from severe degenerative disc disease with radiculopathy and obesity, and from sleep apnea, which the ALJ determined to be non-severe. R. 141-142.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

4

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

5

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp. 3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 51 years old on her alleged disability onset date. R. 25. The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. R. 16. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between April 2, 2020, her alleged onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease with radiculopathy and cervicalgia, shoulder bursitis and tendinitis,

7

status post total thyroidectomy. R. 16.  The ALJ also found that Plaintiff had a history of obesity, which the ALJ determined was not a severe impairment, but which was considered within the limitations of Plaintiff's RFC. R. 17.  The ALJ also considered Plaintiff's claims of significant fatigue due to a thyroidectomy, and difficulty concentrating due to her impairments, including medication.  *Id.*  The ALJ found those alleged conditions "are non-medical impairments," with "no objective medical evidence to corroborate these claim[s]."  *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 17-19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work, subject to various exertional and non-exertional limitations. R. 19–25. The ALJ also found that this RFC would permit the performance of Plaintiff's past relevant work as a program aide group work and pharmacy technician. R. 24 –25.

In the alternative, at step five, the ALJ found that Plaintiff had the RFC to perform a significant number of other jobs in the national economy—*i.e.*, tanning salon attendant, approximately 19,000 jobs; school bus monitor[5], approximately 27,000 jobs; and investigator dealer accounts, approximately 55,000 jobs. R. 25–26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 2, 2020, her alleged onset date, through the date of the decision. R. 26.

---

[5] The ALJ mistakenly referred to this job as "school bus driver" rather than "school bus monitor." R. 26; *see also* R. 70 (reflecting the vocational expert's hearing testimony identifying this job as "School Bus Monitor"). However, the ALJ refers to the correct code under the Dictionary of Occupational Titles for school bus monitor. R. 26 (referring to "DOT 372.667-042"), 70 (reflecting the same code identified by the vocational expert); *see also* DICOT 372.667-042, 1991 WL 673102 (Jan. 1, 2016) (reflecting the job of school bus monitor).

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief (Pl.'s Br.),* ECF No. 17. Plaintiff contends that the ALJ's RFC assessment was not supported by substantial evidence and lacks a comprehensible explanation of the basis on which the ALJ found that Plaintiff had the RFC capacity to perform light work. *Pl.'s Br.* at 14-15, 26. Specifically, Plaintiff complains that the ALJ failed to discuss the impact of fatigue and impaired concentration due to her thyroid condition and pain medication and failed to adequately consider the impact of Plaintiff's pain, in determining that Plaintiff could perform light work. *Id.* at 10-11 14-15, 26.

The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief (D.'s Br.),* ECF No. 20.

## IV.    SUMMARY OF RELEVANT EVIDENCE

In evaluating Plaintiff's claims for benefits, the ALJ noted that Plaintiff testified at the hearing that she was unable to work since the onset date due to a back impairment and shoulder bursitis.  R. 19. The ALJ also noted that Plaintiff reported that she experienced pain in both her upper and lower back that radiated down her left leg, and that she had steroid injections in her lower back. R. 20. Plaintiff further reported that the pain medication she takes made her nauseous and sleepy. *Id.* She claimed to be able to stand for 10 to 15 minutes at a time, walk half a block before needing a break, and lift 5 pounds. *Id.*

9

## V.   DISCUSSION

### A.   Determination of Subjective Statements

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

First, as noted in her decision, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*.; *see* R. 19. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304 ; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)).

In conducting an evaluation of the intensity and persistence of pain and its impact on the ability to work, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her statements as to "intensity, persistence, and limiting effects" were not entirely consistent with the medical evidence. *Id.* In making this finding, the ALJ explicitly stated that "there are several reasons" why Plaintiff's subjective claims were not supported by the record. First, the ALJ noted that Plaintiff's described daily activities, including the ability to make simple meals and feed herself, drive a car, and go shopping with assistance, demonstrated that her daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. 20. The ALJ also noted that the treatment Plaintiff had received for her impairments was "essentially routine" and that the record lacked "non-conclusory opinions, supported by clinical or laboratory evidence, apart from treating or examining physicians, indicating that the claimant is currently disabled."  R. 20.

11

Turning first to Plaintiff's claim that the ALJ failed to discuss the impact of fatigue and impaired concentration due to her thyroid condition and pain medication, the ALJ actually acknowledged that hearing testimony and noted her determination that these were not "medically determinable impairments." R. 17.  The ALJ observed that while fatigue was included in Plaintiff's history of impairments since being diagnosed in 2011, Plaintiff had no active complaints or treatment for fatigue during the relevant time period. R. 17 (citing 898, 901, 916). The ALJ further noted that Plaintiff failed to cite any reported claims of fatigue or reports of medication side effects in the record evidence apart from her own hearing testimony.

Similarly, with respect to Plaintiff's testimony that she experienced diminished concentration due to her impairments and medication, the ALJ noted that Plaintiff's cognitive examinations were within normal limits and concluded that "there is no objective medical evidence to corroborate these claims." R. 17. She further found that there "are no clinical or laboratory findings in the record that would support any other finding." *Id.*

Having reviewed the ALJ's determination and the record evidence, the Court finds that the ALJ not only considered Plaintiff's subjective complaints of pain, fatigue and diminished concentration due to her impairments and medication, but provided a reasonably detailed explanation for why she discounted these subjective complaints based on the medical evidence in the record. Thus, the Court concludes that the ALJ's findings regarding Plaintiff's subject complaints enjoy substantial support in the record and do not provide a basis for remand.

**B.**     **Support For and Explanation of the RFC**

Plaintiff also challenges the ALJ's finding that she had the RFC to perform light work. After discussing various objective test findings and reports of examination, the ALJ found as follows:

12

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday.  The claimant can occasionally climb ramps and stairs, kneel, stoop, crouch, and balance on wet surfaces.  The claimant cannot crawl, climb ladders, ropes, or scaffolds, or workaround hazards, including moving mechanical parts or at unprotected heights.  The claimant can have occasional exposure to temperature extremes of heat and cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation.  The claimant can engage in frequent reaching with occasional overhead reaching.

R. 19. In concluding, the ALJ further explained the restrictions in the RFC:

> In sum, although the claimant does have functional limitations as a result of her physical impairments, they are not to the degree as alleged.  Throughout the relevant time period, the undersigned notes that physical examinations do indicate paraspinal tenderness and reduced range of motion, but also show normal upper extremity and lower extremity strength, intact sensation and normal DTR's and normal gait with no assistive device.  Looking at the claimant's allegations in the light most favorable to her, but in conjunction with the medical evidence available, the undersigned finds that the claimant has a residual functional capacity of light with the above-mentioned restrictions.

R. 24.

Plaintiff challenges the ALJ's RFC determination, arguing that the ALJ failed to adequately explain from the evidence of record why the ALJ concluded that Plaintiff was capable of standing and walking for six hours, lifting 10 pounds frequently and 20 pounds occasionally, and is able to only occasionally reach overhead, but frequently reach in all other directions. *Pl.'s Br*. at 15. Plaintiff raises different arguments in advancing this challenge to the RFC, which the Court addresses in turn.

A claimant's RFC is the most the claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c);

13

*see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Plaintiff contends that based on the ALJ's own recitation of the evidence, Plaintiff underwent numerous sacroiliac joint injections, several right shoulder trigger point injections, lumbar medial branch nerve blocks, and at least one lumbar epidural spinal injection. *Pl.'s Br.* at 18. Plaintiff notes that the ALJ recited uncontradicted medical evidence reflecting that on September 26, 2019, and February 27, 2022, the Plaintiff underwent sacroiliac joint injections, *id*. at 18, and in September 2020, complained of "neck pain with muscle spasm for several weeks and was requesting an injection." *Id*. at 16 (quoting R. 21) (internal quotation marks omitted). The ALJ noted that at the September 1, 2020 visit, "Physical examination noted facet loading, positive straight leg raise on the left side, pain with lumbar extension, and pain on range of motion of the cervical spine.  The claimant was assessed with radiculopathy of the lumbar region and lumbago with sciatica." *Id.* (quoting R. 21) (internal quotation marks omitted).

14

Plaintiff further notes that according to the ALJ's decision, on February 11, 2021, Plaintiff underwent "elective injections at the sacral iliac [sic], and right shoulder. . . ." and on February 17, 2021, she underwent an audio-video visit at Spine and Pain specialty care, where she reported shoulder pain, and lower back pain. *Id.*. She reported that the pain was worse with walking, and sitting long periods of time.  Examination showed tenderness of the sacroiliac joint, positive FABER bilaterally. *Id.* The claimant was assessed with radiculopathy of the lumbar region, and lumbago with sciatica. *Id.*

Plaintiff also notes that the ALJ also cited the fact that a September 17, 2021 MRI of the lumbar spine showed "mild bilateral facet arthrosis at L5/S1." *Id.*  In addition, Plaintiff highlights that the ALJ noted that on October 13, 2021, Plaintiff "underwent a lumbar medial branch block due to a history of lumbar facet arthropathy. Specifically, [she] underwent a bilateral L4-5, L5-S1 lumbar medial branch block with fluoroscopic guidance." *Id.* at 16–17.  At a follow-up on October 19, 2021, Plaintiff "reported that since the medial branch block, she had numbness in the leg and buckling on the left leg. . . .However, she was noted to have had this buckling before." *Id.* at 17 (quoting R. 22) (internal quotation marks omitted).  In an evaluation on March 21, 2022, Plaintiff "acknowledged relief for over a month" from the December 2021 injection. *Id.* (quoting R. 22) (internal quotation marks omitted).

Plaintiff further observed that the ALJ noted in her decision that on July 8, 2022, Plaintiff underwent a cervical trigger point injection, and on follow-up on July 22, 2022, she

> complained of back pain, lower extremity pain, and upper left arm pain. . . . .She reported that she had an epidural and then also trigger points and had relief of pain with this. She had decompression device and she feels that this is helpful.  She reported that she was going to a chiropractor.  She had pain in the leg on the left, and into the groin on the left side. She also still has spasms in the legs.  She had new pain in the left leg and groin, and she has continued chiropractor [sic] for at least 6 weeks. She tried to stay active and walk.  She had numbness as well in the left leg and spasms and pain. Physical examination revealed limited range of motion

of the left shoulder, external rotation negative cross arm test; otherwise general normal range of motion, right shoulder normal, cervical back normal range of motion and neck supple. Neurologic DTR reflexes were normal and symmetric. The claimant was assessed lumbar herniated disc, lumbar facet arthropathy, lumbar radiculopathy, cervicalgia, chronic left shoulder pain.

*Id*. at 17–18 (quoting R. 22).

Plaintiff highlights that the ALJ also noted that on August 11, 2022, physical examination of Plaintiff's left shoulder "indicated that Hawkins test was the most positive test on her examination, and reaching behind her back also created pain. . . . The claimant was assessed with left-sided subacromial bursitis." *Id*. at 18 (quoting R. 22) (internal quotation marks omitted).  On examination dated October 13, 2022, Plaintiff's "left shoulder was tender, with very mild tenderness just under the anterior lateral border of the acromion[.]" *Id*. (quoting R. 22) (internal quotation marks omitted). "There was abnormal range of motion, and pain elicited with range of motion.  Muscle strength was normal, Haw with normal muscle strength, Hawkins test and impingement were positive.  Lastly, sensation was normal.  The claimant was assessed with likely left-sided long head biceps tendinitis." *Id.* (quoting R. 22) (internal quotation marks omitted). Plaintiff also highlights that the ALJ further notes that on November 21, 2022, Plaintiff underwent a cervical trigger point injection. *Id*.

Plaintiff points to the discussion in the ALJ's decision, noting that Plaintiff was diagnosed with lumbar radiculopathy, chronic lumbar facet arthropathy, lumbar disc protrusions, sciatica, subacromial bursitis and nerve impingement of the left shoulder. *Pl.'s Br*. at 18. The ALJ notes that Plaintiff was also "clinically appreciated to manifest findings of positive straight leg raising, limitation of shoulder motion and tendinitis of the left biceps." *Id.* 18–19. In addition, she complained of fatigue due to thyroid pathology, resulting in a total thyroidectomy on November 10, 2021. *Id.* at 19.

16

Plaintiff argues that despite this objective evidence, the ALJ's decision nonetheless concluded that Plaintiff could perform the demands of light work and that her "obviously painful conditions would not interfere with her ability to perform semiskilled and even highly skilled prior work activity." *Id.* at 19.[6] Plaintiff complains that the ALJ failed to articulate a rationale on "a function-by-function basis" explaining her RFC findings, as required by SSR 96-8p. *Pl.'s Br.* at 19. This Court disagrees.

Although an ALJ's RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[,]" SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996), an ALJ is not required "to use particular language or adhere to a particular format in conducting [that] analysis[;]" instead, the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).

In this case, the ALJ detailed the record evidence in a narrative discussion, considered Plaintiff's exertional and non-exertional functional limitations flowing from her impairments,

---

[6] To the extent that Plaintiff suggests that her recitation of this objective evidence contains findings that support greater limitations in the RFC, Plaintiff's argument boils down to nothing more than a disagreement with the ALJ's consideration of the objective evidence. "When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'" *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Moreover, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)). The Court declines Plaintiff's invitation to re-weigh the evidence or to impose the Court's or Plaintiff's own factual determination. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Zirnsak*, 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

and crafted an RFC that reflected those limitations. R. 19–24. Notably, the ALJ's discussion, detailed above, explains why Plaintiff was capable of performing a limited range of light work, specifically finding, among other things, that Plaintiff could lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. R. 19.

The Third Circuit in *Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 134 (3d Circ. 2021), found that the ALJ "properly considered" the claimant's "physical and mental abilities in a function-by-function assessment prior to his RFC determination" where, "[p]rior to making his determination regarding Cosme's RFC, the ALJ reviewed the evidence in the record as he discussed Cosme's physical and mental abilities and explained the evidence he relied upon in reaching his decision and the weight accorded to it." Similarly, based on the present record, this Court also concludes that the ALJ complied with the requirements of SSR 96-8p. *See* R. 19–24.

Plaintiff further argues that despite being confronted with "absolute medical proof that treating physicians authorized at least 10 pain and nerve block injections in the neck, shoulders and back," and the "uncontroverted testimony that plaintiff is required to take potent pain medication and muscle relaxants which render her both sleepy and nauseous, the ALJ assigned a light work RFC without "comprehensible rationale," making it immune from judicial review. *Pl.'s Br.* at 26. Plaintiff further complains that the ALJ dismissed Plaintiff's pain with "no understandable reason why plaintiff's complaints aren't fully endorsed by medical evidence or why her near constant pain and treatment for that pain would not pose any impediments to concentration. . . ." *Id.* at 26–27.

In this case, contrary to Plaintiff's allegations, the ALJ not only detailed the Plaintiff's treatment history, but she assessed Plaintiff's allegations of pain and fatigue, finding her

subjective complaints not entirely consistent with the evidence in the record. R. 20. In evaluating the medical treatment provided to Plaintiff, the ALJ acknowledged the Plaintiff's subjective reports of pain to her treating doctors, and she discussed the abnormal findings in each instance, such as range of motion limitations in the neck and back and left shoulder, and positive pain provocation tests such as FABER and straight leg raising.  R. 21–23.  The ALJ also cited the imaging studies of Plaintiff's neck, back and hips, noting that they showed no more than "mild abnormalities." R. 21. The ALJ also noted normal findings of intact gait, sensation, deep tendon reflexes, and strength. R. 21-23. The Court therefore rejects Plaintiff's assertion that the ALJ's decision is immune from judicial review.

In continuing to challenge the RFC determination, Plaintiff complains that the ALJ "reject[ed] every opinion of every treating doctor[,]" specifically, Edward Shen, M.D. and Ashraf Mansour, M.D. *Pl.'s Br.* at 19–20; *see also id*. at 25 n.6. Plaintiff fails to persuade the Court that the ALJ erred in her consideration of these opinions.

The applicable regulations require the Commissioner to consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).[7] The regulations emphasize

---

[7] For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a).

As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021)

---

including those from [the claimant's] medical sources"). As previously noted, Plaintiff's claims were filed on January 27, 2021.

("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

Here, in finding the opinion of Dr. Shen, dated July 24, 2020 "to be not persuasive," the ALJ noted that the doctor reported that Plaintiff "is unable to stand, seat[sic], or work for long periods of time," but did not provide a "specific assessment of work-related functions, as 'long periods of time" does not indicate the extent of limitation for exertional functions of sitting and standing or 'working'." R. 24. The ALJ further explained that while Dr. Shen noted Plaintiff's treatment, he did not provide any "explanation, rationale, or specific medical findings in support of such limitations." *Id.* The ALJ further found that Dr. Shen's opinion was "not entirely consistent with the medical evidence of record, noting no limitations in motor strength or muscular atrophy of the upper and/or lower extremities[.]" *Id.*

The Court finds no error with the ALJ's consideration of Dr. Shen's opinion. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light of these standards" under 20 C.F.R. §§ 404.1520c, 416.920c where the ALJ concluded that a physician's opinion was not persuasive because "the limitations [the physician] espoused were not consistent with or supported by other evidence of record" such as, *inter alia*,

21

the treatment records, for instance, [which] indicated a greater ability to walk, lift, and stand"). *cf. Pierznik v. Comm'r Soc. Sec.*, No. 22-2369, 2023 WL 4014468, at *1 (3d Cir. June 15, 2023) (concluding that substantial evidence supported the ALJ's RFC determination, including his underlying decision to "not adopt" a physician's opinion because they were "'vague' because they 'failed to address specifically [Appellant's] function-by-function abilities in vocational terms'"), *cert. denied sub nom. Pierznik v. O'Malley*, 144 S. Ct. 1035, 218 L. Ed. 2d 190 (2024).

Notably, "the party seeking reversal normally must explain why the erroneous ruling caused harm." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Here, Plaintiff offers no specific argument or authority to explain why the ALJ erred in discounting Dr. Shen's treating opinion. *See Pl.'s Br.* at 19, 25 n.6. The ALJ's consideration of Dr. Shen's opinion therefore does not serve as a basis to remand this action.

Turning to the second treating opinion, the ALJ evaluated the opinion of Dr. Mansour, dated August 13, 2021, and found it not to be persuasive, noting that there is no function by function assessment, just a statement that Plaintiff "is unable to work due to back pain," which the ALJ noted was an opinion as to the ultimate issue of disability – a decision reserved for the Commissioner. R. 24.  The ALJ further noted that Dr. Mansour provided "no explanation, rationale, or specific medical findings" to support his conclusion, instead noting that the doctor's own treatment notes "typically reflect physical exams with no muscle weakness, tingling, numbness or gait disturbances, no obvious muscle wasting and no neurological focal deficits." *Id.*

The Court finds that substantial evidence supports the ALJ's consideration of Dr. Mansour's opinion. First, the Commissioner is correct that Dr. Mansour's finding that Plaintiff "is unable to work due to back pain" is an issue reserved to the Commissioner. Specifically,

22

statements that a claimant is or is not "disabled, blind, able to work or able to perform regular or continuing work" are statements on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i); *see also Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citations omitted).

Next, the ALJ properly noted that Dr. Mansour provides no explanation, rationale, or specific medical findings to support his conclusions. R. 24. Dr. Mansour simply checks boxes indicating his belief that Plaintiff is unable to work due to "back pain[.]" R. 834. Dr. Mansour does not further explain how Plaintiff's unquantified "back pain" causes (otherwise unidentified) functional limitations that render her incapable of performing light exertional work. *Id*.; *see also Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) ("As we have explained, forms that 'require[ ] the physician only to check boxes and briefly to fill in blanks . . . are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

The ALJ also appropriately considered that Dr. Mansour's own treatment notes typically reflect no muscle weakness, tingling, numbness or gait disturbances, no obvious muscle wasting and no neurological focal deficits. R. 24. This lack of remarkable objective findings upon physical examination supports the ALJ's finding that Dr. Mansour's opinion was not persuasive. *See Koletar v. Kijakazi*, No. 1:21-CV-994, 2022 WL 3598090, at *13 (M.D. Pa. Aug. 23, 2022) (concluding that substantial evidence supported the ALJ's finding that a medical opinion was not persuasive because "the examination findings of the longitudinal record are not consistent with these rather extreme limitations," and the ALJ summarized medical evidence, including physical examinations that revealed, *inter alia*, stable gait, normal muscle tone, intact sensation, and normal reflexes except the plantar reflexes that were zero) (internal quotation marks omitted).

Notably, as with her challenge to the ALJ's consideration of Dr. Shen's opinion, Plaintiff does not explain how or why the ALJ erred in her finding that Dr. Mansour's opinion was not persuasive. *Pl.'s Br.* at 19, 25 n.6. Thus, Plaintiff fails to persuade this Court that the ALJ erred in her consideration of Dr. Mansour's opinion. *Shinseki*, 556 U.S. at 409.[8]

To the extent that plaintiff challenges the ALJ's characterization of Plaintiff's treatment as "routine" in nature, the Commissioner notes that medication management and injections have been found to be "conservative treatment." *D.'s Br.* at 17–18 (citing *Roger v. Kijakazi*, No. 3:20-CV-18060 (NMK), 2021 WL 4191433, at *10 (D.N.J. Sept. 15, 2021) (citing *Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245-46 (3d Cir 2020) (describing injections as "relatively routine and conservative treatment"); *Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at * 8 (D.N.J. May 11, 2016) (noting that the "treatment was conservative: medication, including trigger point injections, and physical therapy"). The Court therefore finds that the ALJ did not err in characterizing Plaintiff's treatment consisting of injections and medication management as "routine." *See Sudler*, 827 F. App'x at 245–46 (characterizing injections as "relatively routine and conservative treatment"); *Jimenez*, 2016 WL 2742864, at *8.

Plaintiff also challenges the reaching limitations in the RFC, arguing that a limitation to occasional reaching in all planes would eliminate all work, and that a limitation to occasional overhead reaching is inconsistent with the ALJ's finding that Plaintiff could lift and carry up to

---

[8] In arguing that the ALJ's RFC determination was not supported by the record, Plaintiff ignores the opinions of the DDS reviewing consultants which the ALJ discussed and which opined that Plaintiff could perform light work. R. 23–24, 109–10, 116–17, 125–26, 133–34. Specifically, the ALJ noted that these consultants "opined that the claimant could perform an eroded range of light work, frequently climb ramps and stairs, never climb ladders, ropes, and scaffolds, occasionally stoop, and crawl." R. 23. Notably, the ALJ found their opinions to be only "partially persuasive," as "only partially consistent with the record." R. 23–24. The ALJ actually concluded that the medical evidence supported greater limitations "regarding postural limitation, as well as with the right shoulder regarding reaching," than those recommended. R. 24.

24

10 pounds frequently and 20 pounds occasionally. *Pl.'s Br.* at 22. The Commissioner argues that a limitation to occasional reaching would not result in an award of benefits. *D.'s Br*. at 17. Moreover, two of the occupations relied upon by the ALJ do not require more than occasional reaching in all planes. *Id*. Thus, the Commissioner contends that Plaintiff's challenge to the lifting limitation is not inconsistent with a finding that she can perform light lifting and carrying. *Id.*

The Court agrees with the Commissioner's argument. Even if Plaintiff were limited to only occasional reaching in all directions, Plaintiff would still be able to perform the jobs of school bus monitor, which does not require reaching, and investigator dealer accounts, which requires occasional reaching. *See* DICOT 372.667-042, 1991 WL 673102 (Jan. 1, 2016) (school bus monitor); DICOT 241.367-038, 1991 WL 672258 (Jan. 1, 2016) (investigator dealer accounts). Accordingly, any alleged error in failing to limit Plaintiff to only occasional reaching in all directions is, at most, harmless. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case").

Despite Plaintiff's arguments to the contrary, the Court finds that the ALJ carefully considered the full evidentiary record, relying upon the medical records to support her conclusion that while there were some abnormalities shown on examination, imaging studies and tests on examination showed minimal abnormalities, and she provided a sufficient explanation as to the basis for her conclusions. As noted *supra*, the ALJ also considered Plaintiff's complaints of pain, fatigue, impaired concentration, and medication interference, but found them unsupported by the objective medical record.

The Court is not persuaded that the ALJ's RFC determination is not supported by substantial evidence in the record.  Nor is the Court persuaded that the ALJ failed to adequately explain her reasoning in reaching that determination. To the contrary, the ALJ's decision thoroughly considers all of the medical records, acknowledges Plaintiff's subjective complaints of pain, and the conservative pain management treatment received, but points to the objective findings that show intact strength, reflexes and sensation.  In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC enjoy substantial support in the record and are consistent with the record.

## V.      CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  June 12, 2026                                    _s/Cheryl L. Pollak_
                                                         CHERYL L. POLLAK
                                                         UNITED STATES MAGISTRATE JUDGE

26